**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA**
Plaintiff

v.

**Juan Antonio Rosario-Cintron (2)**
Defendants

**Criminal No. 13-731 (DRD)**

### OPINION & ORDER

The right to remain silent is a cornerstone of our constitutional configuration.  The Supreme Court deems this right to be so essential that a police officer is required to inform individuals of its existence prior to subjecting them to a custodial interrogation. Once invoked, the right to silence cannot be taken lightly—the interrogation must generally cease.   Failure to adhere to these fundamental procedures comes with consequences to both the Government and society as a whole.  Today, the Government must suffer for the actions of an overzealous police officer.

### I.    THE CONFESSION

A man was shot to death on September 28, 2013, in Canóvanas, Puerto Rico. Puerto Rico Police Officer Jaime Crespo Del Valle ("Officer Crespo") was notified of the incident at 1:10 p.m. and arrived at the scene shortly thereafter while being accompanied by a state prosecutor and a forensic team.  Subsequently, Officer Crespo was informed by other officers that a vehicle occupied by three individuals—Juan Antonio Rosario-Cintron ("Defendant"), William Rosado-Cancel, and Anelys Escobar— was stopped for speeding not too far away.  Suspicious that the two incidents may be related, Officer Crespo, the state prosecutor, and the forensic team all went to this

second location.   Eventually, two firearms were recovered from this second locale, which resulted in the three individuals being taken into custody.

As the instant motion is limited to challenging the admissibility of certain statements made by Defendant, the Court need not address the particulars of the seized firearms nor the other two individuals who were detained.   With these caveats in mind, the Court trains its focus onto the germane facts of the controversy at hand.

Officer Crespo first interviewed Defendant—who was still in custody—the next day at 11:30 a.m. at a police station.   Next, Officer Crespo gave Defendant a form that comprehensively enumerated his *Miranda* rights in both English and Spanish.   Although it contains several grammatical errors, the relevant portion of the form, which is found at Docket No. 57-2, is enclosed below for the sake of clarity:

> You are here as a suspect of apparent accused and before questioning I want to warn you of your right.
> 1- You have the right to remain silent when questioned.
> 2- Anything you say may be used in court against you.
> 3- You have the right to counsel, to talk with counsel before saying anything and to have counsel present during questioning
> 4- If you are indigent and if you wish I will get you a lawyer prior to questioning without charge.
> 5- If you desire to answer my question without legal assistant, you can invoke your right to remain silent at any time and can request for counsel.
> 6- Your statement must be completely free, voluntary and spontaneous and I can not use any degree to persuasion, threat, coercion nor intimidation to force you to answer.
> Have you understood what I have explained to you?
> Are you willing to testify?

Echoing the last two lines, Officer Crespo asked if Defendant understood everything on the form and if he was willing to testify.   In response, Defendant indicated that he did understand everything but that he did not want to testify.   Accordingly, Officer Crespo

wrote "<u>NO</u>" next to the "[a]re you willing to testify" question.  *See Id.*  Afterwards, both of them proceeded to sign the bottom of this document at 11:55 a.m.  *See Id.*

At some point, while still in Defendant's presence, Officer Crespo took notes of the interview.  *See* Docket No. 74-1.  On these notes, Officer Crespo wrote the date, time, and Defendant's personal information.  Directly under this general information, Officer Crespo wrote "[h]e has refused to speak concerning the occurrence and does not wish to make a statement, after having been read the warnings."  *See Id.*  Immediately under this assertion, Officer Crespo drew an asterisk and a horizontal line so that Defendant could sign his notes.  Defendant refused.

At this point, Officer Crespo told Defendant that he would charge all three individuals with murder and that this was his "last chance."  *See* Docket No. 84-1, p. 20.  In response, Defendant agreed to break his silence as long as Anelys Escobar would not be charged with a crime because she, allegedly, was not involved in the murder.[1]  Subsequently, Defendant provided various incriminating statements to Officer Crespo.  The details of this confession were then written by Officer Crespo in his notes.  *See* Docket No. 74-1.

Defendant, who now speaks through counsel, moves for the suppression of these incriminating statements.  Fairly read, the motion to suppress argues that Defendant's *Miranda* rights were violated and that all of Officer Crespo's own statements regarding the interrogation constitute untrustworthy hearsay that do not fall within any exception.  *See* Docket No. 66.

---

[1] The briefs do not specify the nature of Defendant's relationship with Anelys Escobar.

The matter was referred to the Hon. Magistrate Judge Bruce J. McGiverin for a report and recommendation.  After conducting an evidentiary hearing and listening to testimony, the Magistrate Judge recommends that the confession be suppressed because Officer Crespo overstepped his bounds and did not honor Defendant's right to remain silent.  The Court agrees.

## II.   STANDARD OF REVIEW

The Court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  *See* Fed. R. Civ. P. 72(b); Local Rule 72(a); *Matthews v. Weber*, 423 U.S. 261 (1976).  An adversely affected party may contest the Magistrate's report and recommendation by filing its objections.  Fed. R. Civ. P. 72(b).  Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> . . . any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation."  *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert denied*, 474 U.S. 1021 (1985).  Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal."  *Davet v. Maccarone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *see Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in a magistrate's

recommendation, as well as the magistrate's failure to make additional findings);  *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

The Court, in order to accept unopposed portions of the Magistrate Judge's report and recommendation, need only satisfy itself that there is no "plain error" on the face of the record.  *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir. 1996) (en banc) (extending the deferential "plain error" standard of review to the legal conclusions of a magistrate judge that were not objected to); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982) (en banc) (appeal from district court's acceptance of a magistrate judge's findings that were not objected to was reviewed for "plain error"); *see also Nogueras-Cartagena v. United States*, 172 F.Supp. 2d 296, 305 (D.P.R. 2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding Fed. R. Civ. P. 72(b)); *see also Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa. 1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

### III.   THE RIGHT TO REMAIN SILENT

In the pioneering case *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court set out to curtail ever-growing abuses by the police in custodial interrogations. *Miranda* honors an individual's Fifth Amendment privilege against being "compelled in

any criminal case to be a witness against himself" during a custodial interrogation, which is coercive by its very nature.  *See Id.* at 467 ("We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."); U.S. Const. amend. V.  "In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored."  *Miranda*, 384 U.S. at 467.  "A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . '"  *Michigan v. Mosley*, 423 U.S. 96, 103 (1975) (citing *Miranda*, 384 U.S. at 479).

*Miranda* took these legitimate constitutional concerns and turned them into four concrete mandates that live on today.  First, a suspect must be "informed in clear and unequivocal terms that he [or she] has the right to remain silent."  *Miranda*, 384 U.S. at 467-68 ("such a warning is an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere.").  Second, "[t]he warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court."  *Id.* at 469 ("This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it.").  Third, "an individual held for interrogation must be clearly informed that he [or she] has the right to consult with a lawyer and to have the lawyer with him [or her] during

interrogation." *Id.* at 471 ("As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation."). And fourth, "[i]n order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him [or her] not only that he [or she] has the right to consult with an attorney, but also that if he [or she] is indigent a lawyer will be appointed to represent him [or her]." *Id.* at 473 ("Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one.").

The interrogation must cease if at any point the suspect unambiguously invokes his right to remain silent or to an attorney.[2] *Id.* at 473-74 ("[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."); *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (qualifying *Miranda* by maintaining that an invocation of these rights must be "unambiguous" before an immediate stoppage of questioning is required); § 76 The Miranda Rules—Waiver and Invocation of Miranda Rights, 1 Fed. Prac. & Proc. Crim. § 76 (4th ed.). "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation . . . or ask questions to clarify whether the accused wants to invoke his or

---

[2] *Miranda* recognizes a potential exception to this far-reaching legal principle:

> If an individual indicates his desire to remain silent, but has an attorney present, there may be some circumstances in which further questioning would be permissible. In the absence of evidence of overbearing, statements the[n] made in the presence of counsel might be free of the compelling influence of the interrogation process and might fairly be construed as a waiver of the privilege for purposes of these statements.

*Id.* at 473-74 n. 44.

her *Miranda* rights." *Berghuis*, 560 U.S. at 381 (citing *Davis v. United States*, 512 U.S. 452, 461-62 (1994)). Further, "[a]n officer's request for clarification of a spontaneous statement generally does not constitute interrogation." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005); *see also* § 75 The Miranda Rules—Custody, Interrogation, and Exceptions, 1 Fed. Prac. & Proc. Crim. § 75 (4th ed.). "The requirement that law enforcement authorities must respect a person's exercise of [the option to terminate questioning] counteracts the coercive pressures of the custodial setting." *Mosley*, 423 U.S. at 104.

In order for the *Miranda* protections to attach, the person must be in "custody" and subject to "interrogation." "Both of these requirements have become terms of art for purposes of applying the *Miranda* doctrine." § 75 The Miranda Rules—Custody, Interrogation, and Exceptions, 1 Fed. Prac. & Proc. Crim. § 75 (4th ed.). The Court proceeds to briefly summarize how this fundamental terminology has been interpreted by the judiciary.

The definition of "custody" for *Miranda* purposes has been described in certain detail by the Supreme Court:

> As used in our *Miranda* case law, "custody" is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of "the objective circumstances of the interrogation," a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." And in order to determine how a suspect would have "gauge[d]" his "freedom of movement," courts must examine "all of the circumstances surrounding the interrogation." Relevant factors include the location of the questioning, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.
> Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not

all restraints on freedom of movement amount to custody for purposes of *Miranda*. We have "decline[d] to accord talismanic power" to the freedom-of-movement inquiry, and have instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." (internal citations omitted).

*Howes v. Fields*, 132 S. Ct. 1181, 1189-90 (2012); *see also* § 75 The Miranda Rules—Custody, Interrogation, and Exceptions, 1 Fed. Prac. & Proc. Crim. § 75 (4th ed.).  It should be noted that "[o]nly those interrogations that occur while a suspect is in police custody . . . 'heighte[n] the risk' that statements obtained are not the product of the suspect's free choice."  *J.D.B. v. N. Carolina*, 564 U.S. 261, 268-69 (2011) (citing *Dickerson v. United States*, 530 U.S. 428, 435 (2000)).

"'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."  *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); *see also* § 75 The Miranda Rules—Custody, Interrogation, and Exceptions, 1 Fed. Prac. & Proc. Crim. § 75 (4th ed.).  Further, as with "custody," the Supreme Court has also set forth certain guidance for the interpretation of the term "interrogation":

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or

> actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.  (footnotes omitted).

*Innis*, 446 U.S. at 300-02; *see also United States v. Thongsophapo*rn, 503 F.3d 51, 57 (1st Cir. 2007).  As such, when conducting the aforementioned evaluation, the Court should not simply dismiss all statements made by the police that do not end in a question mark.  *See Innis,* 406 U.S. at 301 n. 6.

"The 'functional equivalence' test does not turn on the subjective intent of the particular police officer but on an objective assessment as to whether the police statements and conduct would be perceived as interrogation by a reasonable person in the same circumstances."  *United States v. Taylor*, 985 F.2d 3, 8 (1st Cir. 1993) (citing *Arizona v. Mauro*, 481 U.S. 520, 527 (1987); *Innis*, 446 U.S. at 301–02 n. 7; *United States v. Soto*, 953 F.2d 263, 265 (6th Cir. 1992) ("[a]bsence of intent to interrogate, while not irrelevant, is not determinative of whether police conduct constitutes interrogation").  However, "[a]lthough a different result might obtain were it established that the challenged police conduct was designed to elicit a response, . . . the mere fact that a police officer may be aware that there is a possibility that a suspect may make an incriminating statement is insufficient to establish the functional equivalent of interrogation."  *Taylor*, 985 F.2d at 8; *see also United States v. Davis*, 773 F.3d 334, 339 (1st Cir. 2014).  Notwithstanding, "the *Innis* definition of interrogation is not so broad as to capture within *Miranda*'s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges."  *United States v. Payne*, 954 F.2d 199, 202 (4th Cir. 1992) (reiterated in *Caputo v. Nelson*, 455 F.3d 45, 50 (1st Cir. 2006)).

Nevertheless, it is well imbedded in our legal traditions that a suspect is free to waive his *Miranda* rights.  However, in order for the Court to make such a finding, "[t]he government must prove that a waiver occurred by a preponderance of the evidence."  § 76 The Miranda Rules—Waiver and Invocation of Miranda Rights, 1 Fed. Prac. & Proc. Crim. § 76 (4th ed.) (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).  "The course of decisions since *Miranda* . . . demonstrates that waivers can be established even absent formal or express statements of waiver that would be expected in, say, a judicial hearing to determine if a guilty plea has been properly entered."  *Berghuis*, 560 U.S. at 383. "The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."  *N. Carolina v. Butler*, 441 U.S. 369, 373 (1979).  *"In determining whether there was an implied waiver, the court must look to the totality of the circumstances surrounding the interrogation."*  (emphasis ours).  § 76 The Miranda Rules—Waiver and Invocation of Miranda Rights, 1 Fed. Prac. & Proc. Crim. § 76 (4th ed.) (citing *Fare v. Michael C.*, 442 U.S. 707, 724–25 (1979)).

Further, it should be noted that *Miranda* and its progeny consistently reiterate the following regarding a suspect's voluntary statements:

> In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Miranda*, 384 U.S. at 478; *see also Innis*, 446 U.S. at 299–300; *Oregon v. Elstad*, 470 U.S. 298, 305 (1985) ("'far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable'" (quoting *United States v. Washington*, 431 U.S. 181, 187 (1977)); *Mauro*, 481 U.S. at 529.

Although *Miranda* requires that a suspect's invocation of silence be "scrupulously honored," this does not equate to "a per se proscription of indefinite duration upon any further questioning by any police officer on any subject."[3]  *Mosley*, 423 U.S. at 102–03; § 76 The Miranda Rules—Waiver and Invocation of Miranda Rights, 1 Fed. Prac. & Proc. Crim. § 76 (4th ed.); *see also United States v. Andrade*, 135 F.3d 104, 107 (1st Cir. 1998).  "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'"  *Mosley*, 423 U.S. at 104 (1975); *see also United States v. Barone*, 968 F.2d 1378, 1383 (1st Cir. 1992).

Properly assessing whether a suspect's silence was "scrupulously honored" requires an analysis of, *inter alia*, the following factors: "(1) whether a reasonable period

---

[3] On the other hand, when suspects invoke their right to an attorney, "questioning . . . must cease, only now the police may not reapproach the defendant later to seek a waiver."  § 76 The Miranda Rules—Waiver and Invocation of Miranda Rights, 1 Fed. Prac. & Proc. Crim. § 76 (4th ed.).  Specifically, the Supreme Court stated:

> . . . although we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation . . . , the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.  (footnote omitted).

*Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

of time passed prior to the resumption [of questioning], (2) whether the same officer resumed questioning, (3) whether the suspect received refreshed *Miranda* warnings, and (4) whether questioning concerned the same alleged crime." *United States v. Oquendo-Rivas*, 750 F.3d 12, 17-18 (1st Cir. 2014); *see also United States v. Lugo Guerrero*, 524 F.3d 5, 12 (1st Cir. 2008) (citing *Mosley*, 423 U.S. at 104–06). Moreover, the Court notes that the Seventh Circuit explicitly mentions two additional factors that merit attention: "the scope of the second interrogation" and "the degree to which police officers pursued further interrogation once the suspect had invoked his right to silence." *United States v. Schwensow*, 151 F.3d 650, 658 (7th Cir. 1998), *cert. denied*, 525 U.S. 1059 (1998). "Beyond assessing these factors, however, our ultimate review must account for the 'totality of the circumstances,' with an eye to determining whether the suspect retained the ability to choose whether and when to speak." *Oquendo-Rivas*, 750 F.3d at 18; *Lugo Guerrero*, 524 F.3d at 12 (quoting *Thongsophaporn*, 503 F.3d at 57).

When "custody" and "interrogation" are in play, *Miranda* takes precedence over the traditional voluntariness test of the Fifth and Fourteenth Amendment: "*Miranda*'s procedural safeguards exist precisely because the voluntariness test is an inadequate barrier when custodial interrogation is at stake." *J.D.B.*, 564 U.S. at 281 (citing *Miranda*, 384 U.S. at 458 ("Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice"); *Dickerson*, 530 U.S. at 442 ("reliance on the traditional totality-of-the-circumstances test raise[s] a risk of overlooking an involuntary custodial confession")). In comparing the two systems, the

Supreme Court celebrates the virtues of *Miranda*'s somewhat inflexible framework while accepting its necessary evils:

> Whatever the defects, if any, of this relatively rigid requirement that interrogation must cease upon the accused's request for an attorney [or to remain silent], *Miranda*'s holding has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible.  This gain in specificity, which benefits the accused and the State alike, has been thought to outweigh the burdens that the decision in *Miranda* imposes on law enforcement agencies and the courts by requiring the suppression of trustworthy and highly probative evidence even though the confession might be voluntary under traditional Fifth Amendment analysis. *See Michigan v. Tucker*, 417 U.S. 433, 443–446, 94 S.Ct. 2357, 2363–2365, 41 L.Ed.2d 182 (1974).

*Fare*, 442 U.S. at 718.   Accordingly, "the inherently coercive nature of custodial interrogation 'blurs the line between voluntary and involuntary statements.'"  *J.D.B.*, 564 U.S. at 269 (citing *Dickerson*, 530 U.S. at 435).

## IV.   THE SUPPRESSION

Analyzing the admissibility of Defendant's incriminating statements requires thorough analysis of the totality of circumstances surrounding the interview at the police station.  Appropriate scrutiny will require the Court to decide five issues: (1) whether Defendant was in "custody" during the interview, (2) whether Defendant adequately invoked his right to remain silent, (3) whether Defendant's invocation of silence was "scrupulously honored," (4) whether Defendant was subjected to "interrogation" after invoking his right to silence, and (5) the extent of the evidence to be suppressed.  The Court addresses these matters in seriatim fashion.

## A.  The Arrest

As to "custody," there can be no debate.  Defendant was arrested by the police in the afternoon after several firearms were recovered.   By the time Officer Crespo conducted the interview, which was on the following day, Defendant was still detained. Further, Officer Crespo even found the need to advise Defendant of his *Miranda* rights. Additionally, the Government, understandably, does not contest the Magistrate Judge's finding that Defendant was in "custody" during the interview.   *See* Docket No. 78, p. 6. For all of these reasons, the Court finds that Defendant was in "custody" when Officer Crespo conducted the interview.

## B.  The Invocation of Silence

Also beyond serious dispute is the fact that Defendant invoked his right to silence during the interview.  Officer Crespo provided Defendant with a form enumerating his *Miranda* rights and asked Defendant if he understood the form and if he was willing to testify.  *See* Docket No. 57-2.  After reading the form, Defendant alerted Officer Crespo that he understood his rights, but would not testify.  As such, Officer Crespo wrote "<u>NO</u>" next to the "[a]re you willing to testify" question.  *See Id.*  Thereafter, both parties signed the bottom of this *Miranda* document.  *See Id.*  Accordingly, Defendant properly and unambiguously invoked his right to remain silent.

## C.  The Ensuing Interrogation

The next phase of the analysis focuses on whether Defendant was "interrogated" after the unambiguous invocation of his right to silence.  After careful consideration, meticulous investigation, and thorough deliberation, the Court finds that Officer Crespo

did improperly "interrogate" Defendant after he invoked his right to silence.  The Court explains its reasoning.

Despite the fact that both parties signed the *Miranda* sheet, which acknowledged that Defendant did not agree to speak, the interaction between the two continued.  It should be noted that the interview had already lasted twenty-five minutes by this time. On a separate sheet of paper used for his notes, Officer Crespo wrote down Defendant's personal information and the fact that Defendant did not want to testify. *See* Docket No. 74-1.  Then, Officer Crespo asked Defendant to sign these notes. Defendant rejected the offer.  Officer Crespo then advised Defendant that all three individuals—Defendant, William Rosado-Cancel, and Anelys Escobar—would be charged with murder and that this was his "last chance."  *See* Docket No. 84-1, p. 20. As a result of this statement, Defendant agreed to speak to Officer Crespo as long as Anelys Escobar was not charged with a crime as she was, allegedly, not involved in the incident.  Thereafter, Defendant provided various incriminating statements to Officer Crespo.

"Interrogation" can be "express questioning or its functional equivalent."  *Innis*, 446 U.S. at 300-01.  In the case at bar, the Court has no basis to find "express questioning" as Officer Crespo's statement is not a question in the literal sense. However, the Court should not simply dismiss all statements made by the police that do not end in a question mark.  *See Id.* at 301 n. 6.  Thus, the Court must decide whether Officer Crespo's statement is the "functional equivalent" of "express questioning."

Referencing this "functional equivalent" doctrine, the Supreme Court stated that "[a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation."   *See Id.* at 301. Notwithstanding, this analysis "focuses primarily upon the perceptions of the suspect, rather than the intent of the police."   *See Id.*; *Taylor*, 985 F.2d at 8 ("The 'functional equivalence' test does not turn on the subjective intent of the particular police officer but on an objective assessment as to whether the police statements and conduct would be perceived as interrogation by a reasonable person in the same circumstances."). However, this statement is immediately qualified:

> This is not to say that the intent of the police is irrelevant, for it may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response. In particular, where a police practice is designed to elicit an incriminating response from the accused, it is unlikely that the practice will not also be one which the police should have known was reasonably likely to have that effect.

*Innis*, 446 U.S. at 301 n. 7; *see also Taylor*, 985 F.2d at 8 ("Although a different result might obtain were it established that the challenged police conduct was designed to elicit a response, . . . the mere fact that a police officer may be aware that there is a possibility that a suspect may make an incriminating statement is insufficient to establish the functional equivalent of interrogation.").

Considering the abovementioned legal principles, the Court extensively researched the "functional equivalence" doctrine without locating any parallel case by the Supreme Court or the First Circuit.  However, two other circuits have confronted very similar factual scenarios.  These cases are discussed below.

In 2004, the Ninth Circuit decided that an officer's statement to a suspect that it was his "last chance" to cooperate in the investigation constituted "interrogation" under *Miranda*.   *See United States v. Padilla*, 387 F.3d 1087, 1092-93 (9th Cir. 2004). Consequently, the suspect's incriminating statements that were obtained in response to this asseveration were ruled inadmissible.   The Ninth Circuit justified this ruling as follows:

> Agent Garriola's "last chance to cooperate" statement constituted interrogation because the agent should have known that it was reasonably likely that such a comment would evoke an incriminating response. It is difficult to imagine any purpose for such a statement other than to elicit a response. The fact that Agent Garriola was seeking a response with regard to a separate investigation does not alter our conclusion. The "last chance" of which Padilla had been advised was the last chance for a possible bargain over Padilla's federal charges, and a response related to those charges was a natural result of the question. The question was "reasonably likely to evoke an incriminating response." *[Innis,]* at 302 n. 7 . . . ; *see United States v. Brown*, 720 F.2d 1059, 1068 (9th Cir. 1983) ("It is almost axiomatic in criminal investigation that if a suspect is induced to talk at all, he is likely to hurt his case."). We conclude, therefore, that Padilla's statement resulted from custodial interrogation and should have been excluded.

*Id.* at 1093.  Although *Padilla* is not binding, it is tremendously persuasive in light of its similarity to the instant case.

Similarly, thirteen years earlier, the Ninth Circuit excluded incriminatory statements given by a suspect in another case: *Collazo v. Estelle*, 940 F.2d 411 (9th Cir. 1991).  The suspect, who was in custody at the time, was advised of his *Miranda* rights.  The following exchange ensued:

[Suspect]: Oh, you know, ah, can I, you know, talk to a lawyer?

[First Officer]: It's up to you. This is your **last chance** to talk to us, though.

[Suspect]: I understand that.

[First Officer]: Once you get a lawyer, he's gonna say forget it. You know, don't talk to the police. Then it might be worse for you.

[Suspect]: Pardon me?

[First Officer]: Then it might be worse for you.

[Suspect]: Why?

[First Officer]: Because, ah, you know, there's other people involved in this thing, and we would like to get everybody. If you don't want to talk about it, uh—

[Second Officer]: Well, he's asked for a lawyer, so why don't we, I guess we'll end our interview right there.

[Suspect]: If, ah, if ah, this gonna be stupid for you, you know, for me it means a lot, you know.

[First Officer]: If you're arrested for murder, it does mean a lot.  (emphasis provided).

*Id.* at 414.  Within a few hours, before he could be provided with counsel, the suspect confessed.  *Id.*  The Ninth Circuit found that this exchange rendered the suspect's subsequent statements involuntary, which required their suppression.

However, the Ninth Circuit does have two other distinguishable cases that have not required the exclusion of incriminatory statements made in response to a "last chance to cooperate" statement made by the police.  In both *United States v. Toscano-Padilla*, 996 F.2d 1229 (9th Cir. 1993) (unpublished), and *United States v. Gamez*, 301 F.3d 1138, 1144-45 (9th Cir. 2002), the Ninth Circuit ruled that the officer's "last chance" proclamations were insufficient to make a suspect's ensuing incriminatory statements involuntary.  The Court finds these two Ninth Circuit cases to be less persuasive than the others.  First, contrary to the case at hand, the suspects in these two cases signed a waiver form after being advised of their *Miranda* rights.  Second, the *Toscano* case is unpublished and cannot be cited as authority within the Ninth Circuit.  *See* Ninth Circuit Rule 36-3.  And third, the Court notes that both of these Ninth Circuit opinions were

decided prior to *Padilla*, which is the Ninth Circuit's most recent expression on the matter.

Moving on, the Seventh Circuit "found the functional equivalent of interrogation where a police officer told a defendant who had not been advised of his *Miranda* rights that he would inform the district attorney of any cooperation the police received from the defendant" because "[a] reasonable objective observer would have expected the officer's invitation for the suspect to help himself by cooperating to elicit an incriminating response." *Enoch v. Gramley*, 70 F.3d 1490, 1500 (7th Cir. 1995) (referencing *Killebrew v. Endicott*, 992 F.2d 660, 663 (7th Cir. 1993)). The same may be said about the scenario in the instant case.

After consulting the aforementioned cases, considering the purposes of *Miranda*, and taking into account the fact that it is the Government who shoulders the burden of persuasion, the Court must find that—after analyzing the totality of circumstances— Officer Crespo's actions and statements to Defendant in response to his unambiguous invocation of his right to silence constituted the "functional equivalent" of "interrogation."

Officer Crespo, who has over twenty years of experience, clearly "should know" that his statement, combined with his actions, was "reasonably likely to evoke an incriminating response." *See Innis*, 446 U.S. at 301. Further, "an objective assessment" reveals that Officer Crespo's "statements and conduct would be perceived as interrogation by a reasonable person in the same circumstances" as Defendant during the interview. *See Taylor*, 985 F.2d at 8. Indeed, with respect to the "last chance" comment, "[i]t is difficult to imagine any purpose for such a statement other than to elicit a response." *Padilla*, 387 F.3d at 1093. Finally, the fact that it is the

Government who must prove the admissibility of the confession weighs heavily in this otherwise close case. *See, e.g., Missouri v. Seibert*, 542 U.S. 600, 608 n. 1 (2004); *Brown v. Illinois*, 422 U.S. 590, 604 (1975); *Colorado v. Connelly*, 479 U.S. 157, 169 (1986); *Lego v. Twomey*, 404 U.S. 477, 489 (1972). Nonetheless, the analysis cannot end here.

### D. Scrupulously Dishonored

The fact that Officer Crespo's actions and statements were deemed to be the "functional equivalent" of "interrogation" does not necessarily dictate that the Court suppress Defendant's confession. Suppression now hinges on whether or not Defendant's silence was "scrupulously honored." Although *Miranda* requires questioning to cease once a suspect invokes his or her right to remain silent, this does not stand for "a per se proscription of indefinite duration upon any further questioning by any police officer on any subject." *Mosley*, 423 U.S. at 102–03; § 76 The Miranda Rules—Waiver and Invocation of Miranda Rights, 1 Fed. Prac. & Proc. Crim. § 76 (4th ed.); *see also Andrade*, 135 F.3d at 107.

As such, determining whether a suspect's silence was "scrupulously honored" requires an analysis of, *inter alia*, the following factors: "(1) whether a reasonable period of time passed prior to the resumption [of questioning], (2) whether the same officer resumed questioning, (3) whether the suspect received refreshed *Miranda* warnings, and (4) whether questioning concerned the same alleged crime." *United States v. Oquendo-Rivas*, 750 F.3d 12, 17-18 (1st Cir. 2014); *see also United States v. Lugo Guerrero*, 524 F.3d 5, 12 (1st Cir. 2008) (citing *Mosley*, 423 U.S. at 104–06). Further, for the sake of completeness, the Court recognizes that the Seventh Circuit explicitly mentions two additional factors meriting attention: "the scope of the second

interrogation" and "the degree to which police officers pursued further interrogation once the suspect had invoked his right to silence." *Schwensow*, 151 F.3d at 658, *cert. denied*, 525 U.S. 1059 (1998). "Beyond assessing these factors, however, our ultimate review must account for the 'totality of the circumstances,' with an eye to determining whether the suspect retained the ability to choose whether and when to speak." *Oquendo-Rivas*, 750 F.3d at 18; *Lugo Guerrero*, 524 F.3d at 12 (quoting *Thongsophaporn*, 503 F.3d at 57).

Turning to the particulars of the case, these factors, as eloquently stated by the Magistrate Judge, move the Court to suppress Defendant's confession:

> (1) no reasonable amount of time passed prior to the resumption [of questioning] since [Officer] Crespo immediately proceeded to require that [Defendant] sign a second document stating that he declined to give a statement and to warn him that he had one last chance to testify; (2) it was the same officer that resumed questioning, (3) [Defendant] did not [receive] refreshed *Miranda* warnings [after agreeing to speak in response to Officer Crespo's "last chance" statement], and (4) the verbal exchange between [Officer] Crespo and [Defendant] concerned the same alleged crime. Compare with *Mosley*, 423 U.S. at 106-107 (finding that the "right to cut off questioning" had been scrupulously honored because the police immediately ceased interrogation, resumed questioning after an extended period of time had passed, different officers did the questioning each time and gave full warning at the outset of each interrogation, and the questioning was for different crimes.).

Docket No. 78, p. 8. However, it should be noted that the two other explicit Seventh Circuit factors—"the scope of the second interrogation" and "the degree to which police officers pursued further interrogation once the suspect had invoked his right to silence"—are more friendly to the Government. Nevertheless, the Court finds, as the Honorable Magistrate Judge does, that an objective evaluation of the "totality of the circumstances" leads to a finding that Defendant's silence was not "scrupulously honored." Objectively speaking, in light of Officer Crespo's actions and "last chance"

statement, Defendant did not retain "the ability to choose whether and when to speak." *See Oquendo-Rivas*, 750 F.3d at 18; *Lugo Guerrero*, 524 F.3d at 12 (quoting *Thongsophaporn*, 503 F.3d at 57).  Defendant was inappropriately led to believe that he had to waive his right to silence now or live to regret it forever.  This Court, like others, cannot reward such a practice.

### E. Exclusion of Evidence

In the end, all of Defendant's statements—whether inculpatory or exculpatory— provided during the interview after Officer Crespo's "last chance" comment are hereby suppressed.  *See Innis*, 446 U.S. at 301 n. 5 ("By 'incriminating response' we refer to any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial."); *Miranda*, 384 U.S. at 476-77; § 77 The Miranda Rules— Consequences of a Miranda Violation, 1 Fed. Prac. & Proc. Crim. § 77 (4th ed.) ("No distinction is permitted between 'confessions' and 'admissions,' nor between inculpatory statements and those claimed to be merely 'exculpatory.' Any statement, of whatever nature, comes under the rule.").

The briefs do not advise the Court of the existence of any derivative evidence stemming from Defendant's confession.  In any event, the Court need not enter this realm of analysis as no arguments have been provided on this point nor has Defendant made any request to exclude derivative evidence.  The Court need proceed no further.[4]

### V.   THE DECISION

For all of the foregoing reasons, the Court hereby **ADOPTS** the Hon. Magistrate Judge Bruce J. McGiverin's report and recommendation and **GRANTS** Defendant's

---

[4] The Court, following the lead of the Magistrate Judge, does not address Defendant's hearsay argument as the evidence was suppressed on *Miranda* grounds.  Further, Defendant did not challenge the Magistrate Judge's treatment of this argument by objecting to the report and recommendation.

motion to suppress.[5]  *See* Docket Nos. 66 and 78.  In a few words, the Court rules as follows: (1) Defendant was in "custody" at the time of the interview, (2) Defendant unambiguously invoked his right to remain silent during the interview, (3) Defendant was subsequently "interrogated" by Officer Crespo, (4) Officer Crespo did not "scrupulously honor" Defendant's right to remain silent, and (5) these findings result in the suppression of all of Defendant's statements provided during the interview after Officer Crespo's "last chance" comment.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of July, 2016.

*/S/ Daniel R. Domínguez*
DANIEL R. DOMÍNGUEZ
United States District Judge

---

[5] The Court must take a moment to praise the commendable report and recommendation issued by the Hon. Magistrate Judge Bruce J. McGiverin.